UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMI NATURALITE,

       Petitioner,                   Case No. 2:09-cv-73
                                          HON. GORDON J. QUIST

v.

DEBRA SCUTT,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Jami Naturalite has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his jury conviction for extortion under M.C.L. § 750.213. Petitioner was convicted as a fourth habitual offender and was sentenced to 20 to 30 years imprisonment. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following claims:

I.     Whether the State trial court violated petitioner's right to confrontation when it limited the cross examination of one of the State's witnesses.

II.    Whether the jury instruction was adequate.

III.   Whether appellate counsel was ineffective for failing to raise the issues raised in petitioner's motion for relief from judgment in State court.

IV. Whether appellate counsel was ineffective for failing to assist petitioner in drafting a supplemental pro se brief in petitioner's appeal of right.

V. Whether there was sufficient evidence to support petitioner's conviction.

VI. Whether the extortion letter was protected under the First Amendment.

VII. Whether the trial court was impartial throughout the proceedings.

VIII. Whether trial counsel was ineffective.

IX. Whether the attorney appointed to assist petitioner's pro se representation adequately assisted petitioner in preparing a defense.

X. Whether the prosecutor committed misconduct by delaying turning over discovery material.

XI. Whether the trial court denied petitioner's rights by expressing concern regarding whether petitioner could self represent.

XII. Whether the jury selection process insured an impartial jury.

XIII. Whether the prosecutor's act of referring to petitioner as "he" during trial denied petitioner a fair trial, given petitioner's gender identity disorder.

XIV. Whether the prosecutor committed misconduct by arguing irrelevant facts.

XV. Whether the prosecutor committed misconduct by charging petitioner when the prosecutor "knew that bona fide criminal extortion did not happen."

XVI. Whether the trial court committed error by failing to declare that a letter filed by petitioner on behalf of another person with a court was not the unauthorized practice of law.

XVII. Whether the trial court failed to suppress evidence of discussions between one of the witnesses and his lawyer.

XVIII. Whether the jury was properly instructed.

XIX.  Whether there was sufficient evidence after the preliminary examination to bind petitioner over for trial.

XX.  Whether petitioner's sentence is unconstitutional.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or and unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of AEDPA, a federal court must find a violation of law "clearly established" by holding of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decisions. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the sate court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court

decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoners's case." *Id*. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgement that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* At 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id*. at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams, 529* U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

The Michigan Court of Appeals denied petitioner's appeal of right on December 14, 2004. The Court of Appeals denied petitioner's confrontation of witness claim and extortion jury instruction claim. The Michigan Supreme Court denied leave to appeal on September 28, 2005.

Petitioner filed a motion for relief from judgment in the trial court, which was denied. The Michigan Court of Appeals denied petitioner's application for leave to appeal on July 7, 2008, under M.C.R. 6.508(D). The Michigan Supreme Court denied leave to appeal on December 30, 2008, under M.C.R. 6.508(D).

In the opinion of the undersigned, petitioner is not entitled to habeas relief on claims III-XX. This Court's review of these claims is barred because petitioner failed to present these claims on direct review. Petitioner was denied relief in the state courts on claims III-XX "for failure of the defendant to meet the burden on establishing entitlement to relief under M.C.R. 6.508(D)." Under M.C.R. 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against defendant in a prior appeal or that could have been raised on direct appeal. For claims that could have been raised, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1104, 1006-1007 (6th Cir. 2000). Because M.C.R. 6.508(D) was enacted in 1989 and petitioner's conviction and appeals took place some time thereafter, M.C.R. 6.508(D) was a "firmly established" procedural rule for purposes of petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

A petitioner may only obtain habeas review of such claims if they can establish "cause and prejudice" or that the failure to review the claims would result in a "fundamental miscarriage

of justice." *Strickler v. Greene*, 527 U.S. 263 (1999). Petitioner has attempted to show cause by asserting that appellate counsel was ineffective for failing to raise these issues on direct appeal. In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions

might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). In the opinion of the undersigned, petitioner has failed to show that counsel was ineffective for failing to raise these issues on direct appeal. Petitioner's appellate counsel raised several issues in his appeal of right in the Michigan Court of Appeals. The state appellate court issued a substantial opinion ruling on these issues. While Petitioner's appellate counsel did not raise every conceivable claim, the Supreme Court had held that failure to raise every colorable argument does not constitute ineffective assistance of counsel: "A brief that raises every colorable issue runs the risk of burying good argument. . .," *Jones v. Barnes*, 463 U.S. 745, 753 (1983). Appellate counsel's actions were a strategic decision and do not constitute ineffective assistance of counsel. Petitioner has failed to show that his appellate attorney's inadequacy deprived him of victory. Moreover, petitioner has not established that prejudice occurred by the failure to raise meritless issues on appeal. Petitioner has failed to show cause or prejudice of claims III-XX and a miscarriage of justice has not occurred. Therefore, petitioner's claims are without merit and should be denied.

Claims I and II are not barred by procedural default. In claim I, petitioner argues that the State trial court violated petitioner's right to confrontation when it limited the cross examination of one of the State's witnesses. Petitioner also claims that his rights under the Confrontation Clause were violated when the trial court excluded testimony during trial. The Michigan Court of Appeals denied this claim on the merits during petitioner's direct appeal. The Michigan Court of Appeals stated:

> Defendant argues that the trial court committed error requiring reversal when it did not permit him to ask his accomplice, who entered into a plea agreement in which he agreed to testify truthfully against defendant, the length of sentence that could have been

imposed for the crime with which the accomplice was originally charged.

We review an evidentiary ruling for an abuse of discretion. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). There is an abuse of discretion only "'when the result is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but [the] defiance [of it] . . . .'"" *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002). However, because of the constitutional entitlement to confront and cross-examine witnesses, the standard for finding an abuse of discretion is more rigorous when the issue is the cross-examination of an accomplice witness concerning a grant of immunity given to secure the witness's testimony. In such cases, it is clear error for the trial court to deny the defendant the opportunity to elicit this information. *People v Minor*, 213 Mich App 682, 684-685; 541 NW2d 576 (1995).

In this case, defendant was not denied that opportunity. Evidence was presented to the jury that the accomplice received, as part of the plea bargain, a "delayed sentence" of twelve months, and that, as explained by the accomplice, a delayed sentence essentially means no sentence at all, contingent on his good behavior. This fact distinguishes the present case from *People v Bell*, 88 Mich. App. 345; 276 N.W.2d 605 (1979), in which the defendant was denied the opportunity to establish that the offense to which the accomplice was permitted to plead was one for which the sentence could be limited to probation.

The fact that defendant was able to present evidence of the minimal nature of the punishment the accomplice received under the plea agreement also serves to distinguish this case from *People v Mumford*, 183 Mich. App. 149; 455 N.W.2d 51 (1990), in which the defendant was not permitted to establish the gross disparity between the penalty for the charge the accomplice originally faced, and that to which he was allowed to plead under the plea bargain. Similarly, it distinguishes the instant case from *Minor, supra*, in which the defendant was not allowed to inform the jury that the witness was granted immunity by the prosecution. In all of these cases, the defendants were denied the opportunity to advise the jury that the witness, in exchange for testifying, received extraordinarily lenient treatment that could have been a motivation to provide untruthful testimony. Because this fact was presented to the jury in the instant case, the rule of these cases was not violated.

In *Ohio v. Roberts*, 448 U.S. 56 (1980), the United States Supreme Court held that the Confrontation Clause was not violated when the court admitted the preliminary examination testimony of a witness who did not appear at trial. The Court stated:

> The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule."

*Id.* at 64 (citations omitted).

Claimed errors regarding state evidentiary matters are generally not cognizable in federal habeas corpus action unless the error rises to a level of depriving the petitioner of fundamental fairness.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 491 US 764, 780 (1990); see also *Pulley v. Harris*, 465 US 37, 41, 79 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 US 19, 21 (1975).

Habeas review is limited to whether a trial court's ruling denied the petitioner of a constitutionally guaranteed right. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." In *Delaware v. VanArsdall*, 475 U.S. 673, 679, 680 (1986), the Supreme Court

"prohibited all inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge." As the Court explained, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias." However, the Court also noted, that "[i]t does not follow...that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecutions witness." The trial court may impose "reasonable limits" to avoid "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." The Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Petitioner was able to establish from cross-examination that his accomplice was testifying pursuant to a plea agreement that provided that the accomplice would serve no time in prison. The Michigan Court of Appeals found that petitioner was able to effectively cross-examine the accomplice. Therefore, there was an opportunity for an "effective" cross-examination which is all that is required by the Confrontation Clause. Petitioner's claim should be denied because the claim lacks merit.

In claim II, petitioner argues that the jury instructions given during trial were inadequate. In order to show a constitutional violation, petitioner must demonstrate that the instructions violated due process. *Henderson v. Kibbe*, 431 U.S. 145, 153 (1977).

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

process," . . . not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" . . . .

431 U.S. at 154. The evidence presented at trial, taken in the light most favorable to the prosecution, was sufficient to justify the instructions given by the court. The Michigan Court of Appeals found that the jury instructions as a whole were sufficient to protect petitioner's right. The Michigan Court of Appeals stated:

> Next, defendant argues that the jury instruction concerning the elements of extortion was improper. Specifically, he argues that the instruction that a threat may be conveyed in "general or vague terms" had the potential to mislead the jury as to the elements of the crime – in particular, whether a threat was made to publicly accuse the judge of having committed a crime – and whether the extortionary letter (which was addressed to a third party) was meant to be seen by the judge. We disagree.
>
> We review claims of error as to criminal jury instructions de novo. *People v Hubbard (After Remand)*, 271 Mich App 459, 487; 552 NW2d 493 (1996). In doing so, we read the instructions as a whole, not piecemeal, and the key question is not whether they were absolutely perfect, but whether "they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).
>
> Under this standard, we find no error in the instruction. Taken as a whole, the instructions clearly conveyed the elements of the crime and, in particular, the requirements that defendant threatened to accuse the judge of a crime and intended that the judge give money or take other action against his will. Therefore, the instructions were proper.

Therefore, petitioner is not entitled to relief because the Michigan Court of Appeals' decision was reasonable.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court withing fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); W.D. Mich. LCivR 72.3(b) . Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 30, 2010